UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL DU QUENOY,

                                Plaintiff,

           – against –

THE AMERICAN UNIVERSITY OF BEIRUT,
FADLO KHURI, and TRUDI HODGES,

                              Defendants.

**OPINION AND ORDER**
18 Civ. 6962 (ER)

Ramos, D.J.:

       Paul du Quenoy ("Plaintiff" or "Professor Du Quenoy") brings this civil rights discrimination and breach of contract action against the American University of Beirut ("AUB"), his former employer, Fadlo Khuri ("President Khuri"), president of AUB, and Trudi Hodges ("Hodges"), former Title IX coordinator at AUB. After a student made an informal sexual harassment complaint against Professor Du Quenoy, AUB commenced an investigation that found he violated the university's sexual harassment policies. AUB placed Professor Du Quenoy on leave without pay and did not renew his Lebanese residence permit. Professor Du Quenoy filed a complaint in this District but his employment contract has a forum selection clause designating Lebanon as the proper forum for any disputes arising out of it. Before the Court is Defendants' motion to dismiss on the basis of the forum selection clause, personal jurisdiction for Hodges, and alternatively on *forum non conveniens* and failure to state a claim grounds. For the reasons discussed below, the Defendants' motion is GRANTED.

## I. BACKGROUND

       Professor Du Quenoy is a United States citizen and during the events giving rise to the litigation was an Associate Professor in AUB's Department of History and Archeology. Doc.

30, ¶ 17.  AUB is a non-profit corporation incorporated in New York in 1863 and has a business

office in this District.  *Id.* ¶ 18.  However, it operates as a private university with its main campus

in Beirut, Lebanon.  *Id.*  President Khuri is a United States citizen who was the president of AUB

during the sexual harassment investigation.  *Id.* ¶ 19.  In his capacity as final arbiter of AUB's

investigative process, he approved the investigative panel's findings of violation against

Professor Du Quenoy.  *Id.*  Hodges is a United States citizen who was the leader of AUB's Title

IX office and coordinated all relevant investigative processes during the relevant times.  *Id.* ¶ 20.

Prior to joining AUB, Professor Du Quenoy allegedly had an exceptionally promising

academic career, he had received numerous fellowships, including a Fulbright, and been

published in highly respected journals.  *Id.* ¶ 23–24.  In 2008, AUB invited him to join the

faculty as an Assistant Professor of History.  *Id.* ¶ 24.  Four years later, AUB promoted him three

years ahead of schedule to Associate Professor.  *Id.*  In 2012, Professor Du Quenoy signed an

appointment letter detailing the contract terms of his employment ("Appointment Letter") with

AUB set to expire on September 30, 2019.  *Id.* ¶ 24–25.  The Appointment Letter contained a

choice of law and a forum selection clause that stated as follows:

> The validity, interpretation and enforcement of this Letter shall be governed
> exclusively by the laws of the Republic of Lebanon, without regard to the choice
> of law provisions thereof.  Any dispute arising under, in connection with or in any
> way relating, whether directly or indirectly, to the Letter, your appointment to or
> service on the University's faculty (or your related compensation, leave, benefits or
> allowances), or the termination of that appointment or service, shall be governed
> exclusively by the laws of the Republic of Lebanon, without regard to the choice
> of law provisions thereof, and shall be subject to the exclusive jurisdiction of the
> courts of the Republic of Lebanon located in Beirut.

Doc. 33, Ex. 1.  Whether this clause governs Professor Du Quenoy's lawsuit against

AUB is the principal question in this motion.

The events that gave rise to this lawsuit occurred during the fall semester of 2017 when an AUB student, Sally Smith ("Smith"),[1] raised concerns about Professor Du Quenoy to her academic adviser, Professor Ali Tehrani ("Professor Tehrani").  Doc. 30, ¶¶ 91, 93.  Smith was taking Professor Du Quenoy's history class, "Imperial Russia," that fall, and the year before had taken his fine arts course "Verdi's Operas."  *Id.* ¶ 91.  During a class lecture on October 16, 2017, Professor Du Quenoy admonished Smith to follow the classroom policy as she was reading a book during the class lecture.  *Id.* ¶ 92.  Smith argued with him and allegedly called him a "narcissist."  *Id.* The next day, Smith told Professor Tehrani that Professor Du Quenoy had engaged in inappropriate contact with her in the past, mainly giving her two hugs accompanied with cheek kisses and speech of a romantic nature.  *Id.* ¶ 93.  However, Smith did not want to file a formal complaint.  *Id.* ¶ 95.

According to Professor Du Quenoy, upon information and belief, Professor Tehrani communicated Smith's concerns directly to President Khuri who decided to order a full investigation.  *Id.* ¶ 97.  The panel consisted of three faculty voting members and Hodges, who sat as a non-voting member of the panel given her role as Title IX coordinator.  *Id.* ¶ 98.  Approximately two weeks after the investigation started, President Khuri informed Professor Du Quenoy about it and provided him with copies of AUB's Policies and Procedures.  *Id.* ¶ 100.  AUB's sexual harassment policy in 2012 provided examples of sexual harassment conduct, such as repeated unwelcome flirtation, advances, or propositions, and sexually-oriented messages or images.  Doc. 33, Ex. 2 at 4.  The panel interviewed numerous witnesses, including Smith, AUB professors, other AUB students, and Professor Du Quenoy.  *See, e.g.*, *id.* ¶¶ 101, 110, 127.  The

---

[1] This is a pseudonym to protect the student's identity.  Doc. 30, 1 n.1.

panel also investigated Professor Du Quenoy's Facebook page after a witness alleged that his Facebook page contained photos of him with young AUB students in their bikinis. *Id.* ¶ 144–45.

Professor Du Quenoy alleges various deficiencies in AUB's investigation, such as lack of assistance from Hodges, the Title IX coordinator, lack of counsel during the proceedings, and that the panel was biased against him because he is male. *Id.* ¶ 78. The panel allegedly discounted the testimony of five male witnesses and found Smith more credible than Professor Du Quenoy as she had a more detailed description of events. *Id.* ¶ 176. Additionally, Professor Du Quenoy was barred from confronting Smith during the proceedings. *Id.* ¶ 114. The panel made no findings of fact but instead found it "more likely than not" that Professor Du Quenoy was responsible for violating AUB's policies. *Id.* ¶ 180. The panel's final version of the report was issued on January 30, 2018 and Professor Du Quenoy was placed on an involuntary administrative leave without pay and banned from campus (except for medical care) and the university's e-mail list. *Id.* ¶¶ 183–84, 192, 207. AUB did not renew his residence permit to work and live in Lebanon. *Id.* ¶ 210.

Professor Du Quenoy filed a complaint in this District on August 2, 2018, asserting various counts of discrimination, civil and human rights violations, breach of contract, estoppel, intentional infliction of emotional distress, invasion of privacy, and declaratory relief. Doc. 1, 63–68. He amended the complaint on January 17, 2019. Doc. 30. On February 4, 2019, Defendants filed a motion to dismiss the amended complaint on the basis of the forum selection clause, *forum non conveniens*, personal jurisdiction, and merits of the claim. Doc. 31.

## II.  LEGAL STANDARD

Forum selection clauses must be given controlling weight unless they are unreasonable under the circumstances. *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835,

839 (S.D.N.Y. 2017). The appropriate procedural mechanism for filing a motion to enforce a forum selection clause designating a foreign forum is a motion to dismiss for *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 580 (2013). The doctrine of *forum non conveniens* allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007) (quoting *Carey v. Bayerische Hypo– und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)). Whether to grant or deny a motion dismiss under the doctrine of *forum non conveniens* lies entirely within the broad discretion of the district court. *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).

Ordinarily, a three-step analysis guides the exercise of this discretion.[2] If there is a forum selection clause at issue, however, the calculus is altered because a valid forum selection clause is given "controlling weight in all but the most exceptional cases." *Atlantic*, 134 S. Ct. at 581;[3] *see also M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses are "prima facie valid" and should be enforced unless demonstrated to be "unreasonable" under the circumstances). In such instances, the Court must determine: (1) whether the forum selection clause is valid, and (2) whether public interest factors nevertheless counsel against its enforcement. *Atlantic*, 134 S. Ct. at 581-82. If these requirements are met, then the clause is

---

[2] The Second Circuit has "outlined a three-step process to guide the exercise of that discretion." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)). First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum." *Id.* Second, "it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.* And third, "a court balances the private and public interests implicated in the choice of forum." *Id.*

[3] Although *Atlantic* primarily addresses a motion to transfer under 28 U.S.C. § 1404(a), its analysis is equally applicable to motions to dismiss under *forum non conveniens*. *See* 134 S.Ct. at 583 n. 8 ("For the reasons detailed above . . . the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum selection clauses pointing to state or foreign forums.").

presumptively enforceable unless the party resisting enforcement can show that enforcement would be unreasonable or unjust, or that the clause was invalid for reasons such as fraud or overreaching. *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 383 (2d Cir. 2007).

## III. DISCUSSION

### A. Validity of the Forum Selection Clause

#### 1. The Clause Was Reasonably Communicated

Professor Du Quenoy does not contest that the clause was reasonably communicated to him. In fact, he acknowledges that he signed a contract with AUB nearly seven years ago that included a forum selection clause that stated disputes regarding his service to the university would be governed exclusively by the laws of the Republic of Lebanon. Doc. 37, 2. The clause was written in plain language and appears in the same font as the rest of the text. *See Krys v. Sugrue*, 2009 U.S. Dist. LEXIS 130683, at *27 (S.D.N.Y. Nov. 16, 2009) (forum selection clause is reasonably communicated "if it is stated in clear and unambiguous terms" and appears "in standard font in the text" of the contract).

While Professor Du Quenoy claims he did not negotiate or receive return consideration for the forum selection clause, the record shows otherwise. Doc. 37, 6. An email he submitted into evidence shows that he had the opportunity to bargain the terms of his Appointment Letter. Doc. 37, Ex. 31. On June 25, 2012, Professor Du Quenoy wrote to Patrick Vincent McGreevy, AUB's Dean of Arts and Sciences, and asked clarifying questions about the salary and tenure process and offered to discuss the details in person. *Id.; see also id.* ¶ 56. "Where a forum selection clause grows out of arms-length negotiations between sophisticated parties, this burden [of showing enforceability is unreasonable] is particularly heavy." *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 516 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 211 (2d Cir. 2014)

("*Martinez II*"). That Professor Du Quenoy chose to not specifically address the forum selection clause section of the Appointment Letter is not the same as not having had an opportunity to negotiate it. More importantly, Professor Du Quenoy does not argue that he was fraudulently induced into agreeing to the forum selection clause. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (disposing of argument that party was deprived of day in court when party did not argue they were fraudulently induced into agreeing to forum selection clause). Accordingly, this factor weighs in favor of enforcing the forum selection clause.

### 2. The Clause Was Mandatory

Whether a clause is mandatory or permissive turns on whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. *Martinez II*, 740 F.3d at 217. In *Iskandar v. American Univ. of Beirut*, this District enforced a forum selection clause in an employment contract between a Lebanese professor and AUB. No. 98 CIV. 6616 (WHP), 1999 WL 595651, at *4 (S.D.N.Y. Aug. 9, 1999). There, the appointment letter included a forum selection clause, which said in relevant part that "obligations arising out of this contract shall be subject exclusively to the jurisdiction of the courts of LEBANON." *Id.* at n.3.

Here, the language of the clause is similarly binding. Doc. 37, 2. "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386. The parties' use of the phrase "shall be governed exclusively by the laws of the Republic of Lebanon" and "shall be subject to the exclusive jurisdiction of the courts of the Republic of Lebanon located in Beirut," establish the courts of Beirut, Lebanon as the obligatory venue for proceedings within the scope of the clause. Doc. 33, Ex. 1. Both the reference to a specific location and the indication that the jurisdiction is exclusive, shows that this clause is mandatory. *Phillips*, 494 F.3d at 386–387.

Professor Du Quenoy acknowledges that the Supreme Court has held that it would "not be common" to refuse to give effect to a forum selection clause. Doc. 37, 5 (citing *Atlantic Marine*, 571 U.S. at 64). To rebut the argument that the forum clause is mandatory, he merely makes a conclusory allegation that if a forum selection clause is construed as permissive under Lebanese law, then that construction must govern. Doc. 37, 20 (citing *Martinez II*, 740 F.3d at 220). He further claims it is not possible to apply the construction of the forum selection clause posited by Defendants because the concept of a forum selection clause does not exist in Lebanon. *Id.* at 18–19. He refers to the declaration of W. Caffey Norman, a senior law partner with nearly 30 years of experience in Middle Eastern law, who claims that the concept of contractual forum selection does not apply to employment contracts under Lebanese law. *Id.* at 19, 22; Doc. 1, Ex. 61 ¶ 14.

However, this argument is inapposite as this Court must interpret the enforceability of the forum selection clause under federal common law. In *Martinez*, the Second Circuit held that, whereas here, the forum selection clause also contains a choice-of-law provision, questions of enforceability are resolved under federal law, while interpretive questions about the meaning and scope of the clause are resolved under the substantive law designated in the contract. *Martinez,* 740 F.3d at 224. Additionally, the Second Circuit has routinely enforced forum selection clauses in employment discrimination cases, requiring those claims to be litigated abroad. *See, e.g., id.* at 229–30 (enforcing clause mandating that disability discrimination claims be litigated in England); *Longo v. FlightSafety Int'l Inc.*, 1 F. Supp. 3d 63, 69–70 (E.D.N.Y. 2014) (enforcing clause mandating that sexual harassment discrimination claims be litigated in England); *Iskandar*, 1999 WL 595651, at *4 (requiring age discrimination

claim against AUB be litigated in Lebanon). In sum, the language of the forum clause at issue here is mandatory.

### 3. The Claims and Parties are Subject to the Clause

Lastly, the Court finds that the claims and parties involved are subject to the language of the forum selection clause. "[W]hen ascertaining the applicability of a contractual provision to particular claims, we examine the [factual] substance of those claims, shorn of their labels." *Phillips*, 494 F.3d at 388. There is no dispute that Professor Du Quenoy and AUB are signatories to the Appointment Letter and are the same parties involved in the action. Doc. 33, Ex. 1 at 4. Professor Du Quenoy alleges that his main claims, arising under United States law, are beyond the scope of the contract. Doc. 37, 18. He asserts the contract included no provision for suspension of duty or salary, placing his claims beyond the scope of the contract. *Id.* In the amended complaint, he brings forth claims for Title IX violations based on being excluded from participating in educational benefits after being placed on leave, breach of contract of the Appointment Letter, intentional infliction of emotional distress because AUB withdrew all means of support, and declaratory relief that the long-term or permanent changes to his status at AUB give rise to a controversy related to his future service to AUB. Doc. 30, 64–81.

The precise language of the clause broadly provides that it applies to "[a]ny dispute arising under, in connection with or in any way relating, whether directly or indirectly, to the [Appointment] Letter, your appointment to or service on the University's faculty (or your related compensation, leave, benefits or allowances), or the termination of that appointment or service…." Doc. 37, 2. Additionally, it specifies that Professor Du Quenoy was appointed to the position of Associate Professor "to perform all such duties and have such responsibilities as may be assigned to you in accordance with the University's regular practices, policies and

procedures." Doc. 33, Ex. 1 at 1. Professor Du Quenoy agreed to comply with all of AUB's policies and procedures and that he would receive leave according to AUB's policies. *Id.* To determine whether his main claims arise out of the agreement, the Court must determine whether his rights during the investigative proceedings originate from the Appointment Letter. *Phillips*, 494 F.3d at 390. This Court holds that they do.

Professor Du Quenoy himself states that an actual and justiciable dispute has arisen between him and AUB in that he alleges the investigation, findings, and sanctions were improper, contrary to policy and law, inaccurate, unjustified, and undertaken in bad faith. Doc. 30, ¶ 283. He was placed on leave after an investigative panel found that he violated AUB's policies, which he had agreed to comply with under the Appointment Letter. Doc. 33, Ex. 1 at 1. In the event of any inconsistencies between AUB's policies and the Appointment Letter, the Appointment Letter governs. *Id.* at 4. Alleged misconduct with respect to AUB's policies necessarily relate to the compliance agreements made in the Appointment Letter. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). As Professor Du Quenoy's claims center around AUB's policies and the alleged breach of the Appointment Letter, his claims are covered by the forum clause.

### 4. Plaintiff Has Not Rebutted the Presumption of Enforceability

Having found that the forum selection clause is enforceable, the burden shifts to Professor Du Quenoy to rebut the presumption that Lebanon is an unreasonable or unjust forum for this case. *Martinez*, 883 F. Supp. 2d at 516. He strongly resists litigating in Lebanon and raises several defenses as to why the forum selection clause should not be enforced: (a) it would defeat public policy and violate his statutory rights, (b) the forum selection clause is

unreasonable and would deprive him of his day in court, (c) changed circumstances, (d) waiver or estoppel, and that (e) the forum clause is inapplicable or impossible to apply.  Doc. 37, 6–20,

### a.  Public Policy and Statutory Rights

Professor Du Quenoy makes three arguments as to why enforcement of the forum clause would violate public policy and statutory rights:  (1) AUB is a United States employer (registered in New York) and he is a United States citizen (residing in New York), so enforcing the contract would operate as waiver of his civil rights under United States law, (2) the forum selection clause is voidable because Lebanese laws are insufficient to deter employers from violating civil rights, and (3) New York has an interest in the litigation as it involves the adjudication of rights of a United States citizen against a United States corporation operating as a foreign institution in Lebanon.  Doc. 37, 8–9.

The first two arguments are inapposite as a forum selection clause does not constitute a waiver of civil rights.  *Martinez II*, 740 F.3d at 228 (rejecting argument that enforcing forum selection clause "subverts federal policy by effectively requiring that [plaintiff] forfeit his statutory rights under the ADA").  Professor Du Quenoy alleges that Lebanon has "no civil rights laws of any kind" and that it enforces and maintains laws against individuals that are members of protected classes in the United States.  Doc. 37, 9.  But a forum is not inadequate merely because it does not have an identical cause of action or legal theory as the alternative forum.  *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 699 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004) (holding defendants' legal experts argued convincingly that Russian law provided an adequate alternative remedy despite "no exact equivalent" of the RICO statute in Russia); *see also Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 451 (S.D.N.Y. 1999) (holding forum is only inadequate if remedy provided is so clearly

inadequate or unsatisfactory that it is no remedy at all). The appropriate inquiry here is whether Lebanese law provides "adequate, not identical" relief. *Martinez*, 740 F.3d at 228.

This District has held that Lebanese law provided alternative means of relief for redressing employment discrimination complaints, such as the right to bring a civil suit under Lebanon's Code of Obligations and Contracts ("COC"), which provides damages when employer violates employee in violation of the employment contract, and Article 4 of the Lebanese Code of Civil Procedure ("CCP"), which grants court discretion to apply general principles of law, even in the absence of express law on discrimination, where the facts so warrant. *Iskandar*, 1999 WL 595651, at *3. AUB presents expert testimony from Professor Nasri Antoine Diab ("Professor Diab"), a Lebanese law expert, who corroborates that discrimination claims can be brought under these statutes. Doc. 32, 10. Specifically he asserts that under COC Article 252, a party who does not fully perform its contractual obligations may be liable for damages, and COC Article 221 says that a contract must be executed in accordance with good faith, equity, and usage. Doc. 34, ¶ 10. Professor Diab also asserts that a professor may sue claiming that his contract violation was motivated by discrimination, such as on the basis of sex. *Id.* Finally, Lebanese courts can apply foreign law when a party invokes it or if it is applicable pursuant to CCP Article 142. *Id.* ¶ 21.

The third argument about New York's public policy interest similarly fails because the complaint contains no factual allegations demonstrating New York's interest. Professor Du Quenoy asserts that New York has a public policy interest in adjudicating the civil rights of a United States citizen asserting civil rights law claims against a United States corporation with an office in New York. Doc. 37, 9. However, he cites no case law to support this proposition. On the other hand, this District has held that "New York has a strong public policy of

enforcing forum selection clauses so that parties are able to rely on the terms of the contracts they make." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 293 (S.D.N.Y. 2018) (quoting *Bank v. Laptop & Desktop Repair LLC*, 206 F. Supp. 3d 772, 781 (E.D.N.Y. 2016)).

Furthermore, it is not enough that Professor Du Quenoy is a New York resident or that AUB has an office in this District, because the situs of events giving rise to the claim occurred in Lebanon. Doc. 30, ¶¶ 91–198. AUB points to *Iskandar* where the court held that enforcing the forum clause would not violate a strong New York policy and observing that, like Professor Du Quenoy, Iskandar had resided in Lebanon, performed all of his services for AUB in Lebanon, and willingly signed a contract submitting himself to the jurisdiction of Lebanese courts, making Lebanon the "forum with the greatest interest." 1999 WL 595651, at *3. The one action that occurred in New York in the instant case—Professor Du Quenoy reviewed the investigative panel's report at AUB's New York office—does not rise to the level of New York having substantial nexus or interest in the litigation. Doc. 30, ¶ 7. Accordingly, New York courts are under no compulsion to accept this cause of action against AUB. *Guezou v. Am. Univ. of Beirut*, 2017 NYLJ LEXIS 2390, *5–6 (S.D.N.Y. Aug. 23, 2017).

### b. Du Quenoy Would Not Be Deprived of His Day in Court

Professor Du Quenoy next argues that enforcing the forum clause is unreasonable because the Lebanese judicial system is corrupt. Doc. 37, 9. The Second Circuit has been reluctant to find foreign courts "corrupt" or "biased." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002); *see, e.g., Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 981–82 (2d Cir. 1993) (finding Venezuela to be an adequate alternative forum despite claims of systematic corruption and bias

in favor of defendants).  As considerations of comity preclude a court from adversely judging the quality of a foreign justice system, the non-movant bears the initial burden of producing evidence of corruption, delay, or lack of due process in the foreign forum.  *Lazare*, 337 F. Supp. 3d at 299.  "[C]onclusory submissions, bare denunciations, and sweeping generalizations about the alternative forum's legal system do not satisfy the plaintiff's burden on this issue."  *Id.* (citing *RIGroup LLC v. Trefonisco Mgmt., Ltd.*, 949 F. Supp. 2d 546, 554 (S.D.N.Y. 2013)).

To establish a foreign forum is inadequate, a party must show evidence of corruption "specifically targeted at a party" rather than make broad claims about the judicial system as a whole.  *Zeevi Holdings Ltd. v. Republic of Bulgaria*, 2011 U.S. Dist. LEXIS 38565, at *24 (S.D.N.Y. April 5, 2011), *aff'd*, 494 F. App'x 110 (2d Cir. 2012) (citing *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 494 (2d Cir. 2002)).  These concerns are even more forceful where the parties consented to jurisdiction in the allegedly inadequate forum in the first place.  *Id.*  While Professor Du Quenoy contends that corruption is epidemic in the Lebanese judiciary, he presents no facts that show he or AUB would specifically be the target of corruption.  Doc. 37, 10.  His sole allegation that AUB enjoys significant prominence and political clout in Lebanon is not sufficient to overturn the forum selection clause.  *Id.* at 13.  Accordingly, Professor Du Quenoy has not sufficiently plead that he would be deprived of his day in court if he litigated his case in Lebanon.

### c.  Political Unrest Does Not Make the Forum Clause Unenforceable

Similarly, Professor Du Quenoy has not sufficiently plead that changed circumstances in Lebanon's political climate have made the forum clause unenforceable.  Doc. 37, 15.  When a non-movant makes no showing that political unrest in the foreign forum has had an adverse effect on upon the judicial system there, then that forum is not unreasonable.  *Transunion Corp.*

*v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987). Professor Du Quenoy claims that Lebanon is a highly unstable and dangerous country on the brink of serious civil strife and related international conflict. Doc. 37, 15. In particular, he points to the increased strength of Hezbollah, which the United States has designated as a terrorist organization. *Id.* AUB's expert, Professor Diab, alleges that instability in the political system in Lebanon has no bearing on the judiciary, part of a tri-partite legal system, as it continues to cooperate despite political unrest. Doc. 34, ¶¶ 3, 5. More importantly, Professor Du Quenoy's lack of evidence that the political unrest has adversely affected the judicial system, means he has not met his burden of rebutting enforceability with this argument. *Transunion*, 811 F.2d at 129.

### d. Waiver or Estoppel Does Not Preclude Enforcing the Forum Clause

Professor Du Quenoy argues that AUB should be estopped from insisting on its preferred forum because they made it impossible for him to continue to reside in Lebanon and participate in litigation there. Doc. 37, 17. However, his reliance on *Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC*, to say that a forum selection clause will be deemed waived if the party invoking it took actions inconsistent with it or delayed its enforcement, prejudicing other parties, is unavailing. 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010). In *Wachovia*, the court focused exclusively on procedural actions taken by parties invoking the forum selection clause, such as suing in an unauthorized forum. *Id.*; *see also Ferraro Foods v. M/V Izzet Incekara*, 2001 U.S. Dist. LEXIS 12338, at *12–13 (S.D.N.Y. Aug. 20, 2001) (holding party can waive forum clause when party "has repeatedly represented venue is appropriate" in another forum or "actively pursued substantive motions" in another forum).

AUB invoked the forum selection clause in response to Professor Du Quenoy bringing this action in a forum outside of Beirut, Lebanon, as the Appointment Letter clause requires.

Doc. 33, ¶ 15.  Additionally, Professor Du Quenoy's inability to reside in Lebanon has no bearing on the choice of forum, as he is still able to travel there as a tourist and can hire an attorney to act on his behalf.  He has not shown any proof that he is required to have a valid work permit to assert a legal claim in Lebanon.  Accordingly, Professor Du Quenoy's lack of residence status in Lebanon does not estop AUB from invoking the bargained-for forum selection clause.

### e.  The Forum Clause is Not Impossible to Apply

Professor Du Quenoy's final defense is that the forum clause is impossible to apply because the concept of a forum selection clause in unknown under Lebanese law.  Doc. 37, 18–19.  However, as discussed above, the appropriate inquiry here is whether Lebanese law provides "adequate, not identical" relief and this Court finds that it does.  *Martinez II*, 740 F.3d at 228.  Therefore, Professor Du Quenoy has failed to rebut the presumption of enforceability for the forum selection clause.

### B.  Public Interest Factors and Enforceability

Having found that the forum clause is valid and that Professor Du Quenoy has not rebutted the presumption of enforceability, the Court next considers whether public interest factors make enforcing the clause unreasonable.  In *Gulf Oil Corp. v. Gilbert*, the Supreme Court set forth several factors for courts to consider in determining a *forum non conveniens* motion:  (a) private factors such as, accessibility to sources of proof, cost of obtaining witnesses, and availability of compulsory service; and (2) public factors such as, local interest in the controversy and judicial interest in avoiding unnecessary application of foreign law.  330 U.S. 501, 508–09 (1947), *superseded on other grounds by*, *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 (1994).

This District has previously found that public and private factors weigh in favor of AUB's claims that litigating in this forum would be a substantial inconvenience and improper. *See e.g.*, *Gibbon*, 1983 U.S. Dist. LEXIS 13401, at *5–6 (holding pertinent private and public interest factors weighed in favor of AUB's invocation of the doctrine of *forum non conveniens*). First, accessibility of the witnesses and sources of proof weigh in favor of dismissal. *Id.* It is safe to assume that most of the witnesses reside in Lebanon where they are employed by AUB— such as the investigative panel, colleagues and students who acted as witnesses, and President Khuri—and that the university would be forced to bear the substantial expense of transporting and housing its employee witnesses and expert Lebanese witnesses. *Id.* Professor Du Quenoy does not present a single potential witness that is located in New York, except himself.[4] Moreover, there is an "insubstantial nexus between this case and New York," as Lebanon is the situs of the alleged discrimination which led to Professor Du Quenoy's claims. *Guezou*, 2017 NYLJ LEXIS 2390, at *5–6. Accordingly, the public interest factors weigh in favor of enforceability.

Having found that the forum selection clause is enforceable, the Court need not decide the merits of Professor Du Quenoy's claims. Additionally, Professor Du Quenoy has not met his burden of pleading facts sufficient for a prima facie showing of jurisdiction for Hodges. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (establishing plaintiff must carry burden through affidavits and supporting materials that demonstrate court has personal jurisdiction over defendants). He merely asserts that she worked for AUB, which has operations and headquarters in New York, and that she is part of an organization with substantial New York contacts, "Right to Nonviolence." Doc. 37, 20. Conversely, both Hodges and President Khuri

---

[4] He cites two witnesses who live in the United States, Bassem Abouarab who lives in Maryland and Laya Haddad who lives in New Jersey. Doc. 37, 21, 32, and Ex. 9.

offered sworn testimony that Hodges performed all of her AUB work in Beirut and that she has no ties to New York. Doc. 40, 10. Accordingly, Professor Du Quenoy has not met his burden of showing this Court has jurisdiction over Hodges.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. The letter motions for oral argument and for leave to file a supplemental declaration are DENIED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 31, 45, 47, and close the case.

It is SO ORDERED.

Dated: September 27, 2019
      New York, New York

                                      Edgardo Ramos, U.S.D.J.